205 P.3d 992 (2009)
STATE of Washington, Respondent,
v.
Osadebe Mordi ANENE, Appellant.
No. 37374-2-II.
Court of Appeals of Washington, Division 2.
April 28, 2009.
Catherine E. Glinski, Attorney at Law, Manchester, WA, for Appellant.
Michael C. Kinnie, Attorney at Law, Vancouver, WA, for Respondent.

PART PUBLISHED OPINION
VAN DEREN, C.J.
¶ 1 While Osadebe Anene lay comatose and incompetent, the trial court denied his counsel's *993 motion for a mistrial. A jury subsequently convicted him of first degree child rape and two counts of first degree child molestation for sexual acts committed against his daughter, CJA.[1] Anene appeals, arguing that the trial court abused its discretion because it (1) failed to conduct a competency evaluation when Anene lapsed into a coma on the third day of trial and (2) admitted propensity evidence. We reverse the convictions and remand for a new trial.

FACTS
¶ 2 CJA was born on October 9, 2000. Her sister, SA, was born on March 2, 1990. On October 24, 2005, Child Protective Services (CPS) removed CJA and SA from Anene's home and placed them in foster care. The State charged Anene with one count of first degree child rape (count 1) and two counts of first degree child molestation (counts 2 and 3). All charges were based on his alleged abuse of CJA.
¶ 3 At trial, both girls testified to numerous acts of child molestation or rape by Anene. In addition, a CPS social worker; a CPS investigator; Vancouver Police Department Investigator Steve Norton; the girls' foster mother; and Dr. John Stirling, a pediatrician formerly employed at the Vancouver Clinic, testified. Dr. Stirling's "subspecialty interest ... is in child maltreatment, in neglect and abuse issues." VI-A Report of Proceedings (RP) at 407. Each testified to the girls' statements implicating Anene as the perpetrator of significant child molestation or rape. Anene's wife and his eldest son also testified. Their testimony related to Anene's alleged acts of domestic violence against his wife, his son, and SA.
¶ 4 On the third day of trial, Anene did not appear at the scheduled start time. The trial court noted the following on the record:
This is the third day of trial.... It's now 9:35 A.M. Yesterday I'd made an intentional direction to the attorneys and to the parties, including the defendant, to be here at five minutes to 9 so that we could start the trial at 9:00. It's a half hour past that time and the defendant has not appeared.
VII-A RP at 517. The trial court explained that Anene's attorney "believed [Anene] would be here and has no knowledge of why he isn't here, and has been unable to reach him by cell phone." VII-A RP at 517. The trial court also said:
I don't know if the defendant's absence is voluntary or involuntary. We do know that he knows of the time and place and that he's made every other court appearance in a timely fashion.
If we proceed under the assumption that his absence is voluntary, then we have the right to conclude the trial.
If, however, it later turns out that we commenced trial without him and his absence was involuntary, then any proceedings hereafter would be subject to a motion for new trial.
VI1-A RP at 518.
¶ 5 The prosecutor asked that the trial continue in Anene's absence "because we have flown people from Texas" but noted that they would proceed
understanding that if [Anene] came forward at a later date with a viable, supportable explanation for his absence, such as car accident or some other reasonable cause, that we would have to restart and retry the case.... But given the fact that he has not called counsel, that he has not appeared for over a half an hour after the Court's direction, that he has been appearing on a regular basis prior to this date, I think it's fair to assume that he's voluntarily absenting himself.
VII-A RP at 518-19.
¶ 6 The trial court recessed until 10:00 am. In chambers, the prosecutor stated:
I had placed a phone call to Rex Gunderson, who accompanied theof the Vancouver police department, with Investigator Steve Norton, who went to [Anene's] registered address. They found his car there.
Theythere's no response at the door. They contacted the manager and discovered *994 that Mr. Anene had attempted suicide this morning and has been transported to Southwest Washington Medical Center.
VII-A RP at 520-21.
¶ 7 The parties then returned to the courtroom and the trial court asked the prosecutor how he wished to proceed. The prosecutor responded:
I don't know the extent of the injuries he inflicted upon himself or the method or manner of injuries that he inflicted upon himself to know how soon he will get out ofor if he will get out of [the] medical facility.
It certainly does appear that he did an intentional act that he knew would cause his voluntary non-appearance at trial.
VII-A RP at 523.
¶ 8 The prosecutor's cellular telephone rang and he apparently spoke to Gunderson, who was at the hospital. Following the call, the prosecutor reported:
That was Sergeant Gunderson ... the information he's received is at 7 A.M. [Anene] called on an overdose of an unknown substance. They found him at his home in his military outfit in bed with his military hat on and a Bible on his chest.
[Anene] was lost, that is, his heart stopped beating, in the ambulance on the way to the hospital. They revived him in the ambulance on the way to the hospital.
And they do not know his status as to his survivability at the hospital.
VII-A RP at 525-26. The trial court said, "All right, well, thank you, that gives us a little more information. I'm not going to make any assumptions that he'll be available for this trial the next day or two." VII-A RP at 526.
¶ 9 The prosecutor again asked to proceed with the trial in Anene's absence, arguing that Anene was voluntarily absent:
[C]learly Mr. Anene took medication intending to overdose and kill himself.
He clearly knew that that would absent himself from the trial. Where we have an indication that the defendant is intentionally absenting himself from the trial, I think it would be fair given the fact that the State has individuals flown from Texas present who are scheduled to fly back out tomorrow, and especially where we do not know his status, his mental status, his health status and what his release status is, to proceed with the trial to finish the testimony and allow the matter to go to jury verdict.
VII-A RP at 526-27.
¶ 10 Anene's attorney responded, "I would prefer to wait till ... Major Anene can be here in attendance so that he can further with his assistance of his defense for hisfor his case." VII-A RP at 527. The trial court responded:
The problem is, we don't know if that will occur soon or ever. We have jeopardy attached; we have a jury here that's heard two-thirds of the case and witnesses available, though the fact that they're from Texas and have flights back and all that, of course, is an inconvenience, but isn't determinative.
The rule clearly provides that a person who intentionally absents himself from the proceedings, and that's the conclusion I'm making from hearing this description of him wearing his hat in bed. Obviously he just didn't lay down and take a nap and accidentally take a few pills, he was laying in bed with his uniform and his hat, fully regaled in his military uniform with a Bible on his chest.
It shows, if those facts are true, and I have no reason to dispute them or disbelieve them, it indicates he intended not to appear and he voluntarily absented himself from the proceedings.
RP (Sept. 26, 2007) at 527-28.
¶ 11 The trial court ultimately ruled that
we've got a jury that has not reached a verdict, we've got witnesses who have yet to testify, we've got scheduling, we've got other considerations than simply waiting for the defendant to show up to take the verdict. My conclusion is we'll proceed with the trial. *995 VII-A RP at 529. The trial proceeded and the trial court determined that it would not mention Anene's absence to the jury.[2]
¶ 12 After the prosecutor rested his case that same afternoon, Norton gave a note to the trial court that read, "Prognosis extremely poor. Intubated and comatose." The court asked, "Three to five days before they'll know anything"? It then recognized that "he's certainly not available to court for at least three to five days." VII-A RP 588-89. Nevertheless, the trial court concluded, "[W]e can proceed to verdict without a defendant"[3] and noted that CrR 3.4(b) "specifically so provides."[4] VII-A RP at 590.
¶ 13 Anene's counsel moved for a mistrial
on the grounds that the defendant was to be the only witness in defense of his case, and therefore based on that fact and that the defendant is currently comatose ... proceeding with this case would be highly prejudicial to the defendant....
.... In addition, based on the fact that the defendant allegedly attempted suicide this morning, his mental capacity to stand trial now comes into issue.
VII-B RP at 600-01.
¶ 14 The prosecutor repeated his argument that Anene had voluntarily absented himself from trial, thus allowing the trial to proceed in his absence, stating:
I believe that the defendant made a voluntary choice to ingest pills that he knew or should have known, intentionally took those pills, knowing or should have knowing [sic] that he was not intending to appear at the trial.
I think his intent was to kill himself, and therefore I believe he voluntarily absen[t]ed himself from the trial.
VII-B RP at 601. The prosecutor also argued that Anene's defense counsel had verified that Anene attempted suicide when he argued Anene's mental incapacity.
¶ 15 The trial court took an offer of proof through Norton who testified that he was the investigating officer on the case and that he arrived at Anene's residence at 9:30 am that morning. "Sergeant Gunderson checked the residence. The door was unlocked in front, both the windows were open. At that time we felt it was necessary to enter the residence, so we called patrol for backup." Norton said that the patrol officer "informed us at that time that they had had an early morning call, approximately 0700 hours, or before daylight, involving a suicide attempt and Mr. Anene had been transported to Southwest Washington Medical Center." VII-B RP at 603. Norton then went to the hospital and talked with Dr. Stump, who told him that
they had to work on Mr. Anene for an hour and a half just to get him stabilized.
... He was comatose at this time. He was intubated, on a respirator, and it would be three to five days before they'd know if he was gonna get better or get worse or pass away.
VII-B RP at 605. Norton did not observe Anene while at the hospital.
¶ 16 Based on this testimony, the trial court ruled:
I find that information, although hearsay, to be highly reliable, and my determination is that a mistrial is not appropriate for the reason that the defendant voluntarily chose not to participate in these proceedings after being here for two days, and the court rule, I think it's CrR 3.4(b), specifically permits the Court once trial has begun to finish a trial for the obvious *996 reason that a person, a defendant, cannot see that things are going poorly at trial and then terminate the proceedings by voluntarily absenting him or herself from the proceedings.
Certainly it's an unfortunate situation, and it's a situation totally self-made by the defendant. No one can blamebe blamed. And if the prejudice that inures to his absence results, it's a choice he made.
VII-B RP at 606-07. The trial court then denied Anene's motion for a mistrial. The trial court called in the jury and the defense rested without presenting any evidence.
¶ 17 During closing arguments, the prosecutor pointed to Anene's absence from trial without telling the jury the reason for his absence:
Now, there's one glaring thing that we can't ignore. And that's where is Mr. Anene? Certainly sitting here you must have noticed that he's gone and he is not here. And in noticing that he's gone and is not here when he has appeared for the first part of the trial, you can consider whether or not his absence is evidence, circumstantial evidence, because we have no direct evidence, but circumstantial evidence of a consciousness of guilt. Where's Mr. Anene?
VII-B RP at 630-31.
¶ 18 The jury returned guilty verdicts on all three counts. The jury also returned a special verdict, finding that Anene "use[d] his position of trust or confidence to facilitate the commission of the offenses" and that he "kn[e]w that the victim of his crimes was particularly vulnerable or incapable of resistance." VII-B RP at 647-48.
¶ 19 Four months later, on January 25, 2008, the trial court entered an order finding Anene competent to stand trial and "competent to participate and understand his sentencing in the above-entitled cause." CP at 113. The order was
based upon the evaluation submitted by C. Kirk Johnson, Ph.D indicating that Dr. Johnson met with Mr. Anene on 12/21/07 and 12/26/07 at Southwest Washington Medical Center where he was a patient and on 1/4/08 at the Clark County Jail. This evaluation was to determine defendant's competency to participate in his sentencing.
CP at 113.
¶ 20 On February 8, 2008, Anene appeared for sentencing. He had been in a coma for several months and had suffered brain damage and partial blindness. The trial court noted that Anene "ha[d] little or no recollection of that trial" but that Anene had had the opportunity to listen to a recording of the trial. VIII RP at 654. Anene's counsel then stated:
Mr. Anene is a shell of the man he was at trial several months ago.... [T]hrough an overdose of medication, he was in a coma for several months. When he came to, he... had a tremendous loss of recall of memory, including this entire trial, and he has suffered ... from blindness.
....
... I don't believe that an exceptional sentence, which is within your discretion, would serve any purpose at this point, Your Honor, due to the amount of suffering he had, and I would ask you to sentence Mr. Anene within the standard range.
VIII RP at 656-57.
¶ 21 Anene explained that he did not remember the proceedings but that he respected the judicial system. He did not admit or deny attempting to commit suicide but he said, "We take a lot of medication prior to going to war.... I think some of those medications were also experimental, and I attribute that to my complete memory collapse." VIII RP at 658.
¶ 22 The trial court ruled that "to impose a sentence that he deserved prior to his brain damage would be inappropriate, I think." VIII RP at 667. It refused to impose an exceptional sentence and, instead, sentenced Anene to 180 months in prison, within the standard range.
¶ 23 Anene appeals.

ANALYSIS
¶ 24 Anene argues that the trial court violated his due process rights when it failed *997 to order a competency evaluation before continuing the trial in his absence. Anene also argues that the trial court denied him a fair trial when it admitted propensity evidence of prior sexual abuse against SA and testimony from SA and Anene's wife and son about alleged acts of domestic violence.

I. Proceeding With Trial During Defendant's Incompetence
¶ 25 Anene argues that the trial court violated his right to due process and Washington law when it failed to order and consider a competency evaluation before it continued his trial in his absence. We address this issue, not in light of whether a competency evaluation was necessary, but because Anene was clearly incompetent while he was unconscious. Rather, we consider whether the trial court denied Anene's due process rights when it ordered that the trial proceed while Anene was in a coma and obviously incompetent to assist counsel or participate in his trial on these serious charges.[5]
¶ 26 Here, the trial court did not abuse its discretion in failing to order a competency evaluation because Anene was comatose, making an evaluation superfluous. But the trial court relied solely on CrR 3.4(b) in ordering the trial to continue in Anene's absence. In this, the trial court erred. The issue is whether, under the circumstances, proceeding with the trial when Anene's return to consciousness was doubtful and not foreseen for at least several days violated RCW 10.77.050 and Anene's due process rights.[6]

B. Due Process Right to be Competent at Trial
¶ 27 "The United States Supreme Court has held that the Fourteenth Amendment's due process clause prohibits the conviction of a person who is not competent to stand trial." In re Pers. Restraint of Fleming, 142 Wash.2d 853, 861, 16 P.3d 610 (2001). Washington law provides even greater protection under RCW 10.77.050, which states, "No incompetent person shall be tried, convicted, or sentenced for the commission of an offense so long as such incapacity continues." See also Fleming, 142 Wash.2d at 862, 16 P.3d 610. The test for competency to stand trial is "if the defendant has the capacity to understand the nature of the proceedings against him and to assist in his own defense." State v. Hahn, 106 Wash.2d 885, 895, 726 P.2d 25 (1986).
¶ 28 Drope v. Missouri mandates the outcome in this case. 420 U.S. 162, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975). Drope attempted suicide on the second day of his trial. When the trial court "directed counsel to proceed," Drope's counsel moved for a mistrial, expressing "the difficulty of proceeding without a client." The trial court denied the motion, stating that "the difficulty was brought about by [Drope]." Drope, 420 U.S. at 166, 95 S.Ct. 896. The trial court did not order a competency evaluation. See Drope, 420 U.S. at 166, 95 S.Ct. 896.
¶ 29 In reversing Drope's conviction, the United States Supreme Court declined to determine whether a suicide attempt alone "create[s] a reasonable doubt of competence to stand trial"[7] but it found significant that *998 the defendant "was absent for a crucial portion of his trial." Drope, 420 U.S. at 180-81, 95 S.Ct. 896. It also found that Drope's absence
bears on the analysis in two ways: first, it was due to an act which suggests a rather substantial degree of mental instability contemporaneous with the trial; second, as a result of [Drope's] absence the trial judge and defense counsel were no longer able to observe him in the context of the trial and to gauge from his demeanor whether he was able to cooperate with his attorney and to understand the nature and object of the proceedings against him.
Drope, 420 U.S. at 181, 95 S.Ct. 896 (citation omitted).
¶ 30 Here, Anene's defense counsel moved for a mistrial when Norton confirmed Anene's comatose condition. Anene was thereafter absent for crucial portions of his trial after the trial court denied the mistrial motion. His absence abrogated his defense since he was the only witness to be called. He also was unable to assist during cross-examination of the State's remaining witnesses.
¶ 31 Norton's testimony established Anene's incompetence. The trial court was aware that Anene was in a coma and, therefore, unable to participate in his trial. It also knew that Anene likely attempted suicide, "an act which suggests a rather substantial degree of mental instability." Drope, 420 U.S. at 181, 95 S.Ct. 896. Furthermore, Anene's trial counsel brought the competence issue to the trial court's attention. See Drope, 420 U.S. at 176-77, 95 S.Ct. 896 (defense counsel's mere mention of the defendant's mental problems was sufficient to bring the issue of competency to trial court's attention).
¶ 32 Anene was clearly unable to assist in his own defense since he was not present and was unconscious in the hospital. There was no need for a competency evaluation because it was clear that Anene was incompetent to stand trial due to his inability to assist in his own defense. See Hahn, 106 Wash.2d at 895, 726 P.2d 25. Therefore, the trial court's decision to proceed with the trial in Anene's absence clearly violated Anene's due process rights. We hold that the trial court erred in proceeding with the trial when faced with Anene's obvious incompetence. We reverse his conviction and remand for a new trial.
¶ 33 The balance of this opinion having no precedential value, the panel has determined it should not be published in accordance with RCW 2.06.040.
We concur: ARMSTRONG and HUNT, JJ.
NOTES
[1] We refer to the victims by their initials to protect their rights as minors under RCW 7.69A.030(4).
[2] After the jury returned its verdict, the trial court told the jury, "Major Anene[] tried to take his life today." The trial court commented that "once those girls testified, their testimony was very powerful, it was very compelling and certainly credible, and he saw the handwriting on the wall.... So he took some pills this morning and he's in the hospital now." VII-B RP at 648-49.
[3] The trial court cited State v. Rice, 110 Wash.2d 577, 757 P.2d 889 (1988), a capital case in which the Washington Supreme Court held that where a defendant attempted suicide "pending receipt of the verdict," it was harmless error to proceed to the verdict in the defendant's absence. VII-A RP at 589.
[4] The rule states, in part, "The defendant's voluntary absence after the trial has commenced in his or her presence shall not prevent continuing the trial to and including the return of the verdict." CrR 3.4(b).
[5] The State argues that "[a] defendant is presumed to be competent to stand trial, and the party claiming incompetence bears the burden of proving that the defendant is incompetent by a preponderance of evidence." Br. of Resp't at 12. It further argues that the trial court should have a "wide measure of discretion" because it was able to observe the defendant and because Anene's defense counsel failed to raise the issue of competency throughout the initial discussion of Anene's absence from trial. Br. of Resp't at 13. It maintains that there were no indications that Anene was incompetent other than the suicide attempt. The State also notes that Anene denies that he attempted suicide in his statement of additional grounds for review. RAP 10.10. The State's arguments ignore the fact that it was readily apparent to the trial court that Anene was comatose, intubated, and that his survival was in question when it ruled that the trial could proceed in his absence.
[6] In fact, Anene was apparently unconscious for three and a half months.
[7] In Drope, there were additional factors indicating the need for a competency evaluation. First, Drope's trial counsel expressed concern about Drope's mental stability before trial. Second, Drope's wife expressed concern about his behavior, and, third, Drope's wife reported that Drope attempted to choke her to death before trial. Drope, 420 U.S. at 165-66, 95 S.Ct. 896. But unlike Anene, there was no indication that Drope was comatose during trial.