FILED
COURT OF APPEALS
DIVISION II

2015 JAN 13 AM 11: 14

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45006-2-II |
| Respondent, | |
| v. | |
| LEO BRITTON BUNKER, III, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, C.J. — A jury found Leo Bunker, III guilty of second degree rape (counts I and II), felony harassment (count III), and violation of no-contact orders (VNCO) (counts IV and V). Bunker appeals, arguing that (1) the State violated his constitutional right to notice of the charges against him because the charging document failed to properly allege an essential element of the VNCO charges, counts IV and V, (2) he was denied his right to a unanimous jury, (3) the evidence was insufficient to convict him of the VNCO charges, counts IV and V, and to prove two separate acts of second degree rape, (4) the trial court erred by admitting evidence of Bunker's prior misconduct under ER 404(b), and (5) the trial court erred by imposing a community custody condition prohibiting contact with minors. We hold that the charging information was not constitutionally deficient, there was sufficient evidence to support Bunker's convictions for second

degree rape in count II and VNCO in counts IV and V, and the trial court did not abuse its discretion by admitting evidence of Bunker's prior misconduct. But we accept the State's concession that the trial court violated Bunker's right to a unanimous jury for count IV and that it erred by imposing a community custody condition prohibiting contact with minors. Therefore, we vacate Bunker's conviction on count IV, affirm the remaining convictions, and remand for resentencing consistent with this opinion.

FACTS

I. BACKGROUND

L.H.[1] has known Bunker since childhood. L.H. and Bunker lost touch for over 30 years, but reconnected in August 2011. Bunker and L.H. subsequently moved in together and commenced a dating relationship.

Shortly thereafter, Bunker exhibited controlling behavior. He became possessive, demanding, and aggressive physically and sexually towards L.H. Bunker reportedly told L.H. that she "had no choice" in anything he wanted to do to her sexually and regularly forced L.H. to engage in sexual acts against her will. 1 Report of Proceedings (RP) at 25. Bunker also threatened L.H., telling L.H. that she could not leave because she belonged to him and that if she did leave, he would kill her. L.H. believed that Bunker would carry out these threats because she knew that Bunker had previously assaulted and hospitalized his ex-wife.

Despite L.H.'s wishes to the contrary, Bunker and L.H. were married on October 8. A few days later, Bunker became enraged when he learned that L.H. had been on the phone with a man.

---

[1] We refer to the victim by her initials to protect her privacy.

2

Bunker shoved L.H. onto the bed and pinned her down. Bunker bit L.H. and grabbed her around the throat, making it difficult for her to breathe. L.H. told Bunker to stop, that "[she didn't] want to do this," and that she was hurt. 1 RP at 56. Instead, Bunker removed L.H.'s pants and forced her to have vaginal intercourse.

L.H. testified that she had sex with Bunker nearly every day after the October 11 incident and that she would frequently tell Bunker to stop when he performed sexual acts that she did not like. L.H. described sex with Bunker after the October incident as "pretty much always forceful." 2 RP at 75. Specifically, L.H. claimed that she told Bunker to stop when they had oral sex, that Bunker would not stop, and that Bunker told L.H. that she "didn't have any choice what [sic] he wanted to do." 2 RP at 74.

After Bunker began serving a prison sentence in early November for an unrelated crime, L.H. called police to report that she had been raped. L.H. then obtained a temporary protection order prohibiting Bunker from having either direct or indirect contact with her. Bunker was served with a copy of the temporary order on November 8. The order remained in effect until November 21.

Subsequently, Bunker contacted Amy and Barbara Krahn and requested that they retrieve his belongings from L.H.'s home. L.H. testified that the Krahns called her as many as 10 times and that she called the Krahns back sometime around November 9 or 10. On at least one occasion on November 14, a police officer approached the Krahns as they left L.H.'s home. Furthermore, L.H. claimed that Bunker called and text messaged her frequently after he was incarcerated,[2] but

---

[2] The record does not definitively establish the dates of these calls or texts and L.H. was not asked specifically.

3

that she stopped answering those calls because Bunker was often belligerent. Bunker also wrote a letter to L.H., which, by her recollection, she received sometime after November 10.

## II. PROCEDURE

The Stated charged Bunker by fifth amended information with two counts of second degree rape (counts I and II), one count of harassment – threat to kill (count III), and two counts of VNCO (counts IV and V) occurring between November 8 and November 14. Before trial, the State moved to introduce evidence of several of Bunker's prior convictions for assault. The State argued that L.H.'s knowledge that Bunker had previously assaulted his former wife established that L.H.'s fear of Bunker was an objectively reasonable fear. After weighing the probative value of the evidence against its potential prejudicial effect, the trial court admitted evidence of Bunker's prior conviction for second degree assault under ER 404(b) for the limited purpose of establishing the "reasonable fear" element of the harassment charge.

The jury found Bunker guilty as charged and the trial court imposed an exceptional sentence. In addition, the trial court imposed community custody conditions that prohibited Bunker from having contact with minors, frequenting locations where minors are known to congregate, or occupying positions of trust or authority over minors. Bunker appeals.

## ANALYSIS

### I. DEFICIENT INFORMATION

Bunker argues that the State violated his constitutional right to notice of the charges against him because the information by which he was charged was deficient as to counts IV and V, the two counts of VNCO. Specifically, Bunker contends that the information was deficient because it failed to allege the specific statute under which the protection order had been issued. We disagree.

4

A. STANDARD OF REVIEW

The Sixth Amendment to the United States Constitution provides in part, "In all . . . prosecutions, the accused shall . . . be informed of the nature and cause of the accusation." Article I, section 22 of the Washington Constitution provides in part, "In criminal prosecutions the accused shall have the right . . . to demand the nature and cause of the accusation against him."

A charging document is constitutionally insufficient if it fails to list the essential elements of a crime. *State v. Zillyette*, 178 Wn.2d 153, 158, 307 P.3d 712 (2013) (quoting *State v. Kjorsvik*, 117 Wn.2d 93, 97, 812 P.2d 86 (1991)). The essential elements of a crime are those "'whose specification is necessary to establish the very illegality of the behavior charged.'" *Zillyette*, 178 Wn.2d at 158 (internal quotation marks omitted) (quoting *State v. Ward*, 148 Wn.2d 803, 811, 64 P.3d 640 (2003)). Requiring the State to list the essential elements in the charging document ensures the defendant's right to notice of the nature of the criminal accusation against him guaranteed by the United States and Washington State constitutions. *Zillyette*, 178 Wn.2d at 158. Where, as here, the defendant challenges the sufficiency of the information for the first time on appeal, this court construes the document liberally in favor of validity. *State v. Brown*, 169 Wn.2d 195, 197, 234 P.3d 212 (2010).

Under this liberal construction rule, we will uphold the charging document if an apparently missing element may be "fairly implied" from the document's language. *Kjorsvik*, 117 Wn.2d at 104. We ask, "(1) [D]o the necessary facts appear in any form, or by fair construction can they be found, in the charging document; and, if so, (2) can the defendant show that he was nonetheless actually prejudiced by the inartful language which caused a lack of notice?" *Kjorsvik*, 117 Wn.2d at 105-06. If the necessary elements are neither found nor fairly implied in the charging document,

No. 45006-2-II

we presume prejudice and reverse without reaching the question of prejudice. *State v. Goodman*, 150 Wn.2d 774, 788, 83 P.3d 410 (2004). We read the charging document as a whole, according to common sense and including implied facts. *State v. Nonog*, 169 Wn.2d 220, 227, 237 P.3d 250 (2010).

## B. INFORMATION NOT CONSTITUTIONALLY DEFICIENT

Former RCW 26.50.110 (2009), which governs violations of VNCOs, provides in pertinent part,

> (1)(a) Whenever an order is granted under this chapter, chapter 7.90, 9.94A, 10.99, 26.09, 26.10, 26.26, or 74.34 RCW, or there is a valid foreign protection order as defined in RCW 26.52.020, and the respondent or person to be restrained knows of the order, a violation of any of the following provisions of the order is a gross misdemeanor, except as provided in subsections (4) and (5) of this section:
>
> . . . .
>
> (5) A violation of a court order issued under this chapter, chapter 7.90, 9.94A, 10.99, 26.09, 26.10, 26.26, or 74.34 RCW, or of a valid foreign protection order as defined in RCW 26.52.020, is a class C felony if the offender has at least two previous convictions for violating the provisions of an order issued under this chapter, chapter 7.90, 9.94A, 10.99, 26.09, 26.10, 26.26, or 74.34 RCW, or a valid foreign protection order as defined in RCW 26.52.020. The previous convictions may involve the same victim or other victims specifically protected by the orders the offender violated.

Here, the information charging Bunker with VNCO in count IV alleged,[3]

> On or about and between November 8, 2011, and November 14, 2011, separate and distinct and earlier in time from what is charged in Count V, in the State of Washington, the above-named defendant, with knowledge that the Lewis County Superior Court had previously issued a protection order pursuant to [*L.H.*] *vs. Leo B. Bunker III*, Cause No. 11-2-01392-6, as a separate and distinct act and earlier in time from what is charged in Count V, did violate the order while the order was in effect by knowingly violating the restraint provisions therein, and/or by knowingly violating a provision excluding him or her from a residence, a

---

[3] Regarding the VNCO charge in count V, the charging language was identical to that in count IV except that "Count V" is replaced with "Count IV" and the word "earlier" is replaced by the word "later." Clerk's Papers (CP) at 191-92.

6

workplace, a school or a daycare, and/or by knowingly coming within, or knowingly remaining within, a specified distance of a location; and the defendant had at least two previous convictions for violating the provisions of an order issued under RCW Chapter 26.50, 7.90, 9.94A, 10.99, 26.09, 26.10, 26.26, or 74.34; contrary to Revised Code of Washington 26.50.110(1) and (5).

Clerk's Papers (CP) at 191.

Bunker claims that the State's failure to include the specific statute under which the protection order was entered rendered the information deficient for failure to allege each of the essential elements of the charged crimes. But Bunker's argument is unpersuasive for three reasons.

First, essential elements of a crime include only those facts that must be proved beyond a reasonable doubt to convict the defendant of an offense. *Zillyette*, 178 Wn.2d at 158. Bunker cites no authority to support the proposition that the specific statute under which a protection order is authorized constitutes a fact that the State must prove to convict a defendant of VNCO.

Second, our courts have addressed which facts the State should include in an information charging a VNCO to properly apprise a defendant as to the actual conduct being charged. *City of Seattle v. Termain*, 124 Wn. App. 798, 802, 103 P.3d 209 (2004). In *Termain*, Division One of this court held that an information charging a VNCO was deficient when the document merely charged Termain in the language of the statute and did not recite either the specific statute pursuant to which the underlying order was issued, the number of the order, the date of issuance, any underlying facts, or the name of the protected person. 124 Wn. App. at 806. The *Termain* court agreed that the information need not necessarily include the name of the victim, but concluded that identification of the specific no-contact order, the issuance date from a specific court, the name of the protected person, or sufficient other facts must be included in some manner such that there are

enough bare facts in the charging document that could fairly imply what actual conduct was being charged. *Termain*, 124 Wn. App. at 805-06.

Here, as in *Termain*, the information did not recite the specific statute pursuant to which the underlying order was issued. But unlike *Termain*, the information here contained sufficient other facts. The information charging Bunker identified the protected party by name and it included a range of dates during which the no-contact order was in effect, the county in which the order was entered, and the specific cause number associated with the order. Accordingly, in contrast to the circumstances in *Termain*, there were enough facts in the information here to fairly imply to Bunker the actual conduct being charged. The information therefore contained the necessary essential element, that is, the existence of the specified underlying order.

Finally, a charging document is constitutionally sufficient even if it is factually vague as to some other significant matter. *State v. Winings*, 126 Wn. App. 75, 84, 107 P.3d 141 (2005). A vague charging document may be corrected with a bill of particulars, but the failure to request a bill of particulars waives any vagueness challenge. *State v. Leach*, 113 Wn.2d 679, 687, 782 P.2d 552 (1989). Thus, even if the failure of the State to allege the specific statute under which the protection order was authorized is an "other significant matter" capable of rendering the information vague, Bunker waived any challenge associated with this lack of information because he did not request a bill of particulars. We hold that Bunker's claim fails for these reasons.

## II. RIGHT TO UNANIMOUS JURY

Bunker contends that the trial court violated his right to a unanimous jury by providing the jury with a *Petrich*[4] instruction as to count V, but failing to do so as to count IV, which required the same instruction. We accept the State's concession because the inclusion of the *Petrich* instruction only for the second count of VNCO could have led the jury to believe that it did not need to agree unanimously as to which act constituted the crime for the first count of VNCO and, therefore, prejudice is presumed.

### A. STANDARD OF REVIEW

We review challenged jury instructions de novo. *State v. Pirtle*, 127 Wn.2d 628, 656, 904 P.2d 245 (1995), *cert. denied*, 518 U.S. 1026 (1996). Our state constitution requires that in a criminal prosecution, an impartial jury render a unanimous verdict. CONST. art. I, §§ 21, 22; *State v. Ortega-Martinez*, 124 Wn.2d 702, 707, 881 P.2d 231 (1994); *State v. Stephens*, 93 Wn.2d 186, 190, 607 P.2d 304 (1980). The review standard for whether the failure to provide a unanimity instruction was error hinges on whether we are dealing with an *alternative means* case or a *multiple acts* case. *State v. Bobenhouse*, 166 Wn.2d 881, 892, 214 P.3d 907 (2009). When the State presents evidence of multiple acts that could each form the basis for one charged crime, the State must either choose which of the acts it relied on for a conviction, or the court must instruct the jury to agree on a specific criminal act. *State v. Coleman*, 159 Wn.2d 509, 511, 150 P.3d 1126 (2007).

---

[4] *State v. Petrich*, 101 Wn.2d 566, 683 P.2d 173 (1984).

## B. VIOLATION OF RIGHT TO UNANIMOUS JURY

Here, the State presented evidence of multiple acts, any one of which could arguably form the basis for the two VNCO counts charged. The trial court provided the jury with instruction no. 22 related to count V:

> For Count V – Violation of a Protection Order, the State alleges that the defendant committed acts violating the provisions of a Protection Order on multiple occasions. To convict the defendant of Violation of a Protection Order as charged in Count V, one particular act of Violation of a Protection Order, separate and distinct from what is alleged and charged in Count IV, must be proved beyond a reasonable doubt, and you must unanimously agree as to which act has been proved. You need not unanimously agree that the defendant committed all the acts of Violation of a Protection Order as alleged for Count V.

CP at 231.

But the trial court did not provide this separate instruction for the VNCO charged in count IV, despite the fact that the "to-convict" instructions for each count were virtually identical and the State was relying on the same series of acts to support each count. This was error because members of the jury may have proceeded on the misconception that unanimity as to the act that constituted the crime was required for count V but was not required for count IV.

And while error of this nature is sometimes harmless, we cannot reach such a conclusion here. To be harmless beyond a reasonable doubt, the State must show "no rational juror could have a reasonable doubt as to any of the incidents alleged." *Coleman*, 159 Wn.2d at 512. Among the State's evidence were several phone calls and visits from the Khrans as well as phone calls, text messages, and letters to L.H. from Bunker. Additionally, there was some uncertainty as to the chronology of these alleged contacts. We cannot say that no rational juror could have a reasonable doubt as to any of the incidents alleged. Consequently, we accept the State's concession and vacate

Bunker's conviction for VNCO in count IV.[5] But because the potential relief afforded in a sufficiency challenge is different, we nevertheless address Bunker's sufficiency of the evidence claim.

### III. SUFFICIENCY OF THE EVIDENCE

We turn next to Bunker's assertion that the State presented insufficient evidence of his convictions. Bunker argues that insufficient evidence existed to support his conviction for second degree rape in count II because the State failed to prove two separate acts of rape. Bunker argues further that the State also failed to prove two distinct acts that each amounted to a VNCO. We hold that the State presented sufficient evidence to support each of Bunker's convictions.

### A. STANDARD OF REVIEW

To determine whether evidence is sufficient to sustain a conviction, we review the evidence in the light most favorable to the State. *State v. Wentz*, 149 Wn.2d 342, 347, 68 P.3d 282 (2003). The relevant question is "'whether any rational fact finder could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Budik*, 173 Wn.2d 727, 749, 272 P.3d 816 (2012) (quoting *State v. Engel*, 166 Wn.2d 572, 576, 210 P.3d 1007 (2009)). In claiming insufficient evidence, the defendant necessarily admits the truth of the State's evidence and all reasonable inferences that can be drawn from it. *Drum*, 168 Wn.2d 23, 35, 225 P.3d 237 (2010) (citing *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992)). We interpret the evidence "'most strongly against the defendant.'" *State v. Hernandez*, 172 Wn. App. 537, 543, 290 P.3d

---

[5] Although we vacate count IV due to the lack of unanimity instruction, we note that because it is not possible to ascertain which of the alleged acts the jury agreed constituted the crime in count V, double jeopardy principles would likely prevent any attempt to retry Bunker for acts of VNCO occurring between November 8 and November 14.

No. 45006-2-II

1052 (2012) (internal quotation marks omitted) (quoting *State v. Joy*, 121 Wn.2d 333, 339, 851

P.2d 654 (1993)), *review denied*, 177 Wn.2d 1022 (2013). We consider both circumstantial and

direct evidence as equally reliable and defer to the trier of fact on issues of conflicting testimony,

witness credibility, and the persuasiveness of the evidence. *State v. Thomas*, 150 Wn.2d 821, 874-

75, 83 P.3d 970 (2004).

B. EVIDENCE SUFFICIENT TO SUSTAIN EACH CONVICTION

1. TWO COUNTS OF SECOND DEGREE RAPE

RCW 9A.44.050 governs the crime of second degree rape. It provides in relevant part,

> (1) A person is guilty of rape in the second degree when, under circumstances not
> constituting rape in the first degree, the person engages in sexual intercourse with
> another person:
>     (a) By forcible compulsion.

"Sexual intercourse," in addition to its ordinary meaning,

>     (c) [a]lso means any act of sexual contact between persons involving the
> sex organs of one person and the mouth or anus of another where such persons are
> of the same or opposite sex.

RCW 9A.44.010. And "[f]orcible compulsion" means

> physical force which overcomes resistance, or a threat, express or implied, that
> places a person in fear of death or physical injury to herself or himself or another
> person, or in fear that she or he or another person will be kidnapped.

RCW 9A.44.010(6).

Bunker does not contest whether the State's evidence established that he was guilty of

second degree rape as a result of the October 11 incident. Rather, he argues that the State's

evidence is insufficient to support a second charge of second degree rape because L.H. told police

about only this single incident and never specifically alleged that a second rape occurred. Bunker's

argument is unavailing considering the deference we afford the trier of fact when the sufficiency

12

of the evidence is challenged. The information charging Bunker with a second count of second degree rape alleged,

> On or about and between September 17, 2011 and November 1, 2011, on a day other than October 11, 2011 in the State of Washington, the above-named defendant engaged in sexual intercourse with another person, to-wit: [L.H.], by forcible compulsion; contrary to the Revised Code of Washington 9A.44.050(1)(a).

CP at 189.

L.H. testified that Bunker was "pretty much always forceful" when he initiated sexual intercourse after the October 11 incident and that he would hold her down by her thighs and shoulders. 2 RP at 75. L.H. explained that she often asked Bunker to stop when he engaged in sexual acts that she disliked, including oral sex, but that Bunker would not stop, instead telling L.H. that she had no choice. Bunker testified on his own behalf. Bunker claimed that it was not possible for him to have raped L.H. because he suffers from erectile dysfunction and that he was visiting his sister during the October 11 incident. But we defer to the trier of fact on issues of conflicting testimony and witness credibility. *Thomas*, 150 Wn.2d at 874-75. Here, based on its verdicts, the jury clearly found L.H.'s recitation of the events most credible.

Because a claim of insufficient evidence necessarily admits the truth of the State's evidence and all reasonable inferences that can be drawn from it, *Drum*, 168 Wn.2d at 35, we hold that a rational fact finder could have found that there was sufficient evidence to provide at least one instance, other than the October 11 incident, of sexual intercourse by forcible compulsion beyond a reasonable doubt.

2. TWO COUNTS OF VNCO

Similarly, Bunker does not argue that the State's evidence was insufficient to support a conviction for VNCO. Rather, Bunker asserts that the State's evidence is insufficient to prove two

distinct acts to support two convictions for VNCO. Bunker argues specifically that indirect contact with L.H. through the Krahns did not constitute a violation because the temporary order of protection allowed a third party to retrieve belongings on his behalf. But Bunker mistakes the permanent protection order, which did allow contact through third parties, for the temporary protection order, which did not. The State charged Bunker with two counts of VNCO during the period of November 8 to November 14 when the temporary order of protection was in effect and when its provisions controlled. Among other things, the temporary order mandated that Bunker was

> **[r]estrained** from coming near and from having any contact whatsoever, in person or *through others*, by phone, mail, or any means, directly or indirectly, except for mailing or service of process of court documents by a 3rd party or contact by respondent's lawyer(s) with [L.H.].

Ex. 15 (emphasis added). L.H. testified that the Krahns called her as many as 10 times and that she called the Krahns back around November 9 or 10. Barbara[6] admitted that she contacted L.H. at Bunker's behest to arrange to pick up some of Bunker's belongings. Barbara testified that she and Amy made two separate trips to L.H.'s home to retrieve Bunker's personal effects, one of which occurred on November 14.

Bunker also wrote a letter to L.H. after he was detained. L.H. could not remember the exact date of the letter, but thought that it was "around the first part of November." 2 RP at 148. Furthermore, L.H. claimed that Bunker called and text messaged her frequently after he was incarcerated, but that she stopped answering those calls because Bunker was often belligerent.

---

[6] We refer to Amy and Barbara Krahn individually by their first names for clarity. We intend no disrespect.

According to L.H., Bunker was not dissuaded by her refusal to take his calls and he continued making them. Despite the fact that there is some uncertainty regarding the exact dates of these contacts, when the evidence is viewed in a light most favorable to the State, a rational trier of fact could conclude there were at least two instances during the relevant timeframe in which Bunker violated the terms of the temporary protection order either by contacting L.H. himself, or by arranging contact through a third party contrary to the provisions of the order. We so hold.

### IV. ER 404(B) EVIDENCE

We turn next to Bunker's claim that the trial court erred by ruling that his prior conviction for second degree assault was admissible evidence because the risk of unfair prejudice was substantial and there was a reasonable probability that the error materially affected the outcome of his case. We hold that the trial court did not abuse its discretion by admitting the prior misconduct for the limited purpose on which it based the ruling.

### A. STANDARD OF REVIEW

We review the trial court's interpretation of ER 404(b) de novo as a matter of law. *State v. Foxhoven*, 161 Wn.2d 168, 174, 163 P.3d 786 (2007). If the trial court interprets ER 404(b) correctly, we review the trial court's ruling to admit or exclude evidence of misconduct for an abuse of discretion. *Foxhoven*, 161 Wn.2d at 174. A trial court abuses its discretion where it fails to abide by the rule's requirements. *Foxhoven*, 161 Wn.2d at 174.

Generally, evidence of a defendant's prior misconduct is inadmissible to demonstrate the accused's propensity to commit the crime charged. ER 404(b)[7]; *State v. Fisher*, 165 Wn.2d 727, 744, 202 P.3d 937 (2009). But ER 404(b) allows the introduction of prior misconduct for other purposes like demonstrating motive or intent, common scheme or plan, or lack of mistake or accident. *Fisher*, 165 Wn.2d at 744. And we read ER 404(b) in conjunction with ER 403. ER 403 requires the trial court to exercise its discretion in excluding relevant evidence that would be unfairly prejudicial.[8]

Prior to the admission of misconduct evidence, the court must (1) find by a preponderance of the evidence the misconduct actually occurred, (2) identify the purpose of admitting the evidence, (3) determine the relevance of the evidence to prove an element of the crime, and (4) weigh the probative value against the prejudicial effect of the evidence. *Fisher*, 165 Wn.2d at 745 (citing *State v. Lough*, 125 Wn.2d 847, 853, 889 P.2d 487 (1995)); *Foxhoven*, 161 Wn.2d at 175. Doubtful cases must be resolved in favor of exclusion. *State v. Thang*, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002).

---

[7] ER 404(b) provides,
> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

[8] ER 403 provides that relevant evidence
> may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

## B. EVIDENCE PROPERLY ADMITTED

Contrary to Bunker's assertion, the trial court properly interpreted and applied ER 404(b) in ruling that one of Bunker's prior assault convictions was admissible for a very limited purpose. Our courts have previously addressed similar questions in factually comparable circumstances. For example, in *State v. Ragin*, 94 Wn. App. 407, 410, 972 P.2d 519 (1999), the State charged the defendant with harassment when he called the victim from jail and threatened him. There, Division One of this court held that it was not error to admit evidence of the defendant's prior violent acts to demonstrate to the jury that it was reasonable for the victim to be fearful of the defendant's threats. *Raglin*, 94 Wn. App. at 413. Similarly, in *State v. Barragan*, 102 Wn. App. 754, 760, 9 P.3d 942 (2000), Division Three of this court affirmed the trial court's admission of Barragan's prior assaults because the victim's knowledge of these prior assaults was relevant to show that the victim reasonably feared that the defendant's threats to him would be carried out. Our Supreme Court has explicitly approved of this reasoning. *State v. Magers*, 164 Wn.2d 174, 182, 189 P.3d 126 (2008).

Here, the trial court ruled that evidence of Bunker's prior violence towards his former wife was admissible solely for the purpose of showing that L.H. reasonably feared that Bunker would carry out the threats he made. This reasoning is consistent with the aforementioned cases where our courts found no error. Furthermore, in addition to endorsing the reasoning employed in *Ragin* and *Barragan*, the *Magers* court also reiterated the long-recognized rule that evidence of prior misconduct is admissible "if it is 'necessary to prove a material issue.'" 164 Wn.2d at 183 (quoting *State v. Powell*, 126 Wn.2d 244, 262, 893 P.2d 615 (1995)).

17

Being placed in "reasonable fear" that a threat will be carried out was at issue here as it was in the cases cited above. The trial court excluded several other instances of misconduct the State sought to introduce, properly considered the probative value of the evidence against its prejudicial effect, and also provided proper limiting instructions, both during L.H.'s testimony and as part of the final instructions. Accordingly, we hold that the trial court's ruling was not manifestly unreasonable and, therefore, it was not an abuse of discretion to admit evidence of Bunker's prior misconduct.

## V. COMMUNITY CUSTODY CONDITIONS

Bunker next argues that the trial court erred by imposing the community custody conditions related to minors because those conditions were not crime related. The State concedes that this condition was not crime related and was, therefore, improperly imposed by the sentencing court. We accept the State's concession and remand with instructions to strike this condition.

A defendant may argue for the first time on appeal that sentencing conditions placed on his community custody were imposed without authority under existing statutes. *State v. Jones*, 118 Wn. App. 199, 204, 76 P.3d 258 (2003). Whether to impose community custody conditions is within the discretion of the sentencing court and will be reversed only if manifestly unreasonable. *State v. Bahl*, 164 Wn.2d 739, 753, 193 P.3d 678 (2008). RCW 9.94A.703(3)(f) states that a court may order an offender to comply with any crime-related prohibitions. Additionally, the statute allows a court to order that an offender refrain from direct or indirect contact with the victim of the crime *or* a specified class of individuals. RCW 9.94A.703(3)(b). A court abuses its discretion when it exceeds its sentencing authority. *State v. C.D.C.*, 145 Wn. App. 621, 625, 186 P.3d 1166 (2008).

18

In the "other conditions" portion of Bunker's judgment and sentence there are several provisions related to minor children including prohibitions on contact with minor children and against holding any position of trust or authority over minor children.

But Bunker's crime was unrelated to contact with minors. As the State admits is possible, the imposition of this community custody condition appears to be a scrivener's error during the completion of boiler plate sentencing forms. Accordingly, the sentencing court exceeded its authority by imposing this condition contrary to RCW 9.94A.703(3)(f). We accept the State's concession and remand to the sentencing court to strike the conditions prohibiting contact with minors.

## VI. STATEMENT OF ADDITIONAL GROUNDS (SAG)

Bunker filed a SAG in which he asserts that (1) he received ineffective assistance of counsel, (2) his speedy trial rights were violated, (3) the State committed prosecutorial misconduct, and (4) he could not assist in his own defense because of cancer treatment that was contemporaneous with his trial. We hold that these claims either lack merit or rely on matters outside of the record.[9]

### A. INEFFECTIVE ASSISTANCE OF COUNSEL

Bunker contends that he received ineffective assistance of counsel because his attorney "never came to see [him]," did not sufficiently investigate L.H., and failed to subpoena tapes of

---

[9] Bunker also argues that the trial court erroneously allowed improper hearsay evidence, but he does not state what evidence should have been excluded. Bunker also appears to contend that the trial court erred by not offering a lesser included jury instruction, but this portion of Bunker's handwritten SAG is illegible and we are not required to search the record in support of Bunker's claims. RAP 10.10(c).

L.H.'s interviews with police along with telephone records that Bunker argues would have impeached L.H.'s testimony. SAG at 5.

But because the trial court did not consider these tapes or telephone records, Bunker wishes to raise issues on appeal that require evidence or facts not in the existing trial record, and when a defendant seeks to do so, the appropriate means is through a personal restraint petition. *State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). We hold that Bunker's claim fails for this reason.

### B. SPEEDY TRIAL RIGHTS

Bunker asserts that the trial court violated his speedy trial rights. Bunker appears to base this argument on the fact that Judge Nelson Hunt found good cause to grant a continuance beyond the September trial date notwithstanding a previous warning from Judge Richard Brosey that a failure to proceed with the case as scheduled would result in dismissal.[10] In Bunker's view, it was an abuse of the trial court's discretion for one judge to "overrule" another. Bunker's argument is unavailing.

Bunker provides no authority to support the proposition that a judge hearing a pretrial motion cannot find good cause to grant a continuance solely because a different judge in a previous hearing intimated that he or she would not make such a ruling. Bunker also fails to show how his speedy trial rights were violated when it appears that he waived those rights on at least one occasion. Bunker fails to establish that the State violated his speedy trial rights and we are not obligated to search the record in support of his claims. RAP 10.10.

---

[10] Judge Brosey apparently made this statement during a hearing on July 19, 2012. The record before this court does not include any report of proceedings on that date, but the record does show that the original trial date was September 17, 2012.

## C. PROSECUTORIAL MISCONDUCT

Bunker next contends that the State committed prosecutorial misconduct by moving to continue the case before Judge Hunt despite Judge Brosey's statements to the contrary. But as mentioned above, Bunker offers no authority to suggest that one superior court judge is bound by another superior court judge's mere statements on the record. During the ER 404(b) hearing before Judge Brosey, the State first mentioned potential scheduling complications resulting from an injury that L.H. had recently sustained. But there was no motion for continuance made at that time. Judge Brosey suggested that the State "redouble its effort to get [L.H.] down here," implying that he would not continue the case because of her injury. RP (Sept. 5, 2012) at 30. Later, the State brought a motion to continue the trial after learning that L.H. could not travel to testify as planned. The motion was heard by Judge Hunt because Judge Brosey was on vacation.

Bunker claims that the State committed misconduct by bringing the motion to continue in light of Judge Brosey's earlier ruling. But Judge Brosey never heard a motion to continue the trial based on L.H.'s injuries. His statement was not a "ruling." It does not follow that the State committed misconduct simply by filing a motion. We hold that Bunker's claim fails.

## D. ABILITY TO ASSIST IN DEFENSE

Bunker next argues that he was unable to assist in his defense because he was under the influence of painkillers related to his cancer treatment and because he could not speak. Bunker's claim lacks merit.

A person's due process rights can be violated if he or she lacks the capacity to understand the nature of the proceedings against him and to assist in his own defense. *State v. Anene*, 149 Wn. App. 944, 955, 205 P.3d 992 (quoting *State v. Hahn*, 106 Wn.2d 885, 895, 726 P.2d 25

No. 45006-2-II

(1986)), *review denied*, 167 Wn.2d 1017 (2009). But here, the trial court specifically considered Bunker's condition, stated that he appeared lucid, and asked Bunker whether there was any particular reason that he felt he could not proceed to trial because of his medications. Bunker answered, "No." RP (Jan. 24, 2013) at 70. Bunker also testified in support of his innocence. We hold that Bunker was able to assist in his own defense and, therefore, his claim fails.

CONCLUSION

We vacate Bunker's conviction on count IV, affirm the remainder of Bunker's convictions, and remand to strike the community custody condition related to minors and for further proceedings consistent with this opinion.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Johanson, C.J.
JOHANSON, C.J.

We concur:

Worswick, J.
WORSWICK, J.

Sutton, J.
SUTTON, J.

22