IN COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 77796-3-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| RICHARD LEO PARENTEAU, JR. | ) | |
| | ) | FILED: August 26, 2019 |
| Appellant. | ) | |

VERELLEN, J. — Richard Parenteau appeals his conviction of two counts of first degree murder for the deaths of his mother and stepfather. Parenteau argues there was insufficient evidence of premeditation to support his conviction for the death of his mother. The State presented evidence Parenteau's mother was killed at the home she shared with Parenteau, she was hit from behind, she died of multiple blunt force injuries to her head and neck, and Parenteau and his mother argued before her death. Because a rational jury could find him guilty of the crime charged beyond a reasonable doubt, there was sufficient evidence of premeditation.

Parenteau challenges the trial court's ruling that he was competent to stand trial, but the two most recent competency evaluations supported the court's ruling. Parenteau also challenges the court's decision to allow him to represent himself,

but the court adequately inquired whether Parenteau knowingly, intelligently, and voluntarily waived his right to counsel.

Parenteau argues the court violated his right to present a defense when it denied his numerous motions to investigate, present evidence, and subpoena witnesses. The right to control one's defense is not absolute. And here, Parenteau fails to establish error by the trial court in any of the individual rulings.

Parenteau also contends the court entered an untimely restitution order. But the court had good cause to continue the restitution hearing three days past the statutory deadline. The court did not violate RCW 9.94A.753(1).

Parenteau challenges the court imposition of court costs. We accept the State's concession that remand is appropriate for the court to consider Parenteau's ability to pay.

Finally, Parenteau submits a statement of additional grounds alleging numerous errors. But Parenteau fails to provide sufficient citation to the record, argument, or reference to authority to inform us of the nature and occurrence of his alleged errors.

Therefore, we affirm Parenteau's conviction but remand for the court to consider Parenteau's ability to pay court costs.

## FACTS

On July 19, 2014, Linda Parenteau and David Wells's bodies were discovered in different locations in South Seattle. The medical examiner

determined the cause of death for both was blunt force injuries and the manner of death was homicide.

Linda and David lived together in South Seattle with Linda's 47-year-old son, Richard Parenteau. Linda's body was discovered one and a half miles from the house and David's body was discovered three to four blocks from the house. The police obtained a search warrant for the house. At the house, the police discovered a large potential bloodstain in the driveway, blood in the back of a van in the driveway, and two large blood smears on the carpet in the house.

The State charged Parenteau with two counts of first degree murder. Before arraignment, defense counsel raised concern with Parenteau's competency to stand trial. Parenteau asserted the Central Intelligence Agency (CIA) killed Linda and David because Parenteau discovered his previous employer, the Union Gospel Mission, was a drug front for the CIA. Parenteau also claimed that in 2012, during an involuntary commitment at Highland Medical Center, doctors implanted listening devices in his body.

The court ordered a competency evaluation at Western State Hospital. Parenteau participated in the evaluation with Dr. Gregg Gagliardi. Dr. Gagliardi opined Parenteau's "delusional beliefs impair[ed] his ability to have a rational understanding of the facts."[1] Dr. Gagliardi also opined Parenteau's "delusional beliefs preclude[d] his ability to assist defense counsel with a reasonable degree

---

[1] Clerk's Papers (CP) at 28.

3

of rational understanding."[2]  The court concluded Parenteau was incompetent and committed him to Western State Hospital for a 90-day restoration period.

In March 2015, Dr. Ray Hendrickson, a licensed psychologist, attempted to evaluate Parenteau.  Parenteau refused to participate in the evaluation. Dr. Hendrickson reviewed Dr. Gagliardi's report, staff notes, mental health records, letters written by Parenteau, and other materials.  Dr. Hendrickson opined Parenteau's mental illness did not impair his ability to understand the proceeding and consult with his attorney.  Defense counsel disputed the report, and the court ordered another evaluation.  In October 2015, Dr. Hendrickson submitted his second report, which contained the same findings as his first report.  On October 14, 2015, the court determined Parenteau was competent to stand trial.

On October 19, 2015, the court moved forward with arraignment.  At the start of the hearing, Parenteau asked to represent himself.  The court conducted a lengthy colloquy with Parenteau and directed him to review the waiver of counsel form overnight.  The next day, after further inquiry, the court concluded Parenteau was making a knowing, voluntary, and intelligent waiver of counsel.

Following the trial, the jury convicted Parenteau as charged.  The court sentenced Parenteau to 344 months of total confinement.

Parenteau appeals.

---

[2] Id.

ANALYSIS

I. Sufficiency of the Evidence

Parenteau contends the State failed to present sufficient evidence of premeditation to sustain his conviction of first degree premeditated murder for the death of his mother.

We review sufficiency of the evidence de novo.[3] To determine whether there is sufficient evidence to sustain a conviction, we view the evidence in the light most favorable to the State and ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[4] "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom."[5]

To convict Parenteau of first degree murder, the State had to prove beyond a reasonable doubt that Parenteau acted with the premeditated intent to cause the death of Linda.[6] Premeditation "must involve more than a moment in point of time,"[7] and "mere opportunity to deliberate is not sufficient."[8] Premeditation is "'the deliberate formation of and reflection upon the intent to take a human life'" and

---

[3] State v. Hummel, 196 Wn. App. 329, 352, 383 P.3d 592 (2016) (quoting State v. Rich, 184 Wn.2d 897, 903, 365 P.3d 746 (2016)).

[4] State v. Elmi, 166 Wn.2d 209, 214, 207 P.3d 439 (2009).

[5] State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

[6] RCW 9A.32.030(1)(a).

[7] RCW 9A.32.020(1).

[8] State v. Pirtle, 127 Wn.2d 628, 644, 904 P.2d 245 (1995).

5

involves "'the mental process of thinking beforehand, deliberation, reflection, weighing or reasoning for a period of time, however short.'"[9]

"Premeditation may be proved by circumstantial evidence where the inferences drawn by the jury are reasonable and the evidence supporting the jury's finding is substantial."[10] Motive, procurement of a weapon, stealth, and method of killing are "particularly relevant" factors in establishing premeditation,[11] but sufficient proof of premeditation does not require all four.[12]

Here, the medical examiner testified that Linda had multiple blunt force injuries to her head, neck, face, shoulders, chest, back, hands, and forearm. The medical examiner testified Linda had 17 separate injuries to her head. He also testified Linda's cause of death was blunt force injury and possible asphyxia due to blunt force injuries to the head and neck. A ball of paper was found deep in Linda's throat.

A neighbor testified that the same week David and Linda were killed, she observed David, Linda, and Parenteau talking in front of the house. The neighbor testified that David told Parenteau he had to move out of the house by September

---

[9] State v. Gentry, 125 Wn.2d 570, 597-98, 888 P.2d 1105 (1995) (quoting State v. Robtoy, 98 Wn.2d 30, 43, 653 P.2d 284 (1982); State v. Ollens, 107 Wn.2d 848, 850, 733 P.2d 984 (1987)).

[10] State v. Finch, 137 Wn.2d 792, 831, 975 P.2d 967 (1999).

[11] Pirtle, 127 Wn.2d at 643.

[12] See State v. Ortiz, 119 Wn.2d 294, 297, 831 P.2d 1060 (1992)) (sufficient evidence of premeditation without discussion of motive or stealth); State v. Sherrill, 145 Wn. App. 473, 485, 186 P.3d 1157 (2008) (sufficient evidence of premeditation despite lack of evidence of motive, procurement of a weapon, or stealth).

1, 2014. Parenteau started shouting and said, "You guys said you were going to help me."[13]

Viewing the evidence in the light most favorable to the State, we conclude Parenteau's conviction for first degree murder in count I, for the death of his mother, was supported by sufficient evidence of premeditation. The State presented evidence that multiple wounds were inflicted on Linda, she was struck from behind, and Parenteau had motive because he was angry about moving out of the house.[14]

## II. Competency to Stand Trial

Parenteau contends the court abused its discretion when it found him competent to stand trial.

We review a court's competency determination for abuse of discretion.[15] "The trial court abuses its discretion when its decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons."[16]

---

[13] Report of Proceedings (RP) (Oct. 24, 2017) at 1192.

[14] See Gentry, 125 Wn.2d at 599 ("[S]ufficient evidence to infer premeditation has been found where (1) multiple wounds were inflicted; (2) a weapon was used; (3) the victim was struck from behind; and (4) there was evidence of a motive, such as robbery or sexual assault. Sufficient evidence to infer premeditation also has been found where multiple wounds were inflicted by a knife procured at the site of the killing, the killing took place in a room away from the kitchen, where the knife was found, where the victim was struck in the face and where the evidence indicated that the victim had engaged in a prolonged struggle.").

[15] State v. Benn, 120 Wn.2d 631, 662, 845 P.2d 289 (1993).

[16] State v. Fedoruk, 5 Wn. App. 2d 317, 335, 426 P.3d 757 (2018), review denied, 192 Wn.2d 1012, 432 P.3d 792 (2019).

"[T]he conviction of an accused person while he is legally incompetent violates due process, and . . . state procedures must be adequate to protect this right."[17] Washington codifies this constitutional right in RCW 10.77.050, which provides, "No incompetent person shall be tried, convicted, or sentenced for the commission of an offense so long as such incapacity continues." Under the statute, a person is incompetent if they lack the capacity to "understand the nature of the proceedings against him or her" and "assist in his or her own defense as a result of mental disease or defect."[18] But "[t]he mere existence of a mental disorder or the existence of delusions does not prevent a defendant from being competent."[19]

"[A]ll that due process requires is compliance with the mandates of chapter 10.77 RCW."[20] "[W]henever there is reason to doubt a defendant's competency to stand trial, the court must order an expert to evaluate the defendant's mental condition."[21] Following the evaluation, if the court finds the defendant incompetent and the defendant is charged with a felony, RCW 10.77.086 controls.[22] RCW 10.77.086(1)(a)(i)(A) provides the court "[s]hall commit the defendant to . . .

---

[17] Pate v. Robinson, 383 U.S. 375, 378, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966) (citing Bishop v. United States, 350 U.S. 961, 76 S. Ct. 440, 100 L. Ed. 835 (1956)).

[18] RCW 10.77.010(15); see also In re Fleming, 142 Wn.2d 853, 861-62, 16 P.3d 610 (2001).

[19] Fedoruk, 5 Wn. App. 2d at 335.

[20] State v. Coley, 180 Wn.2d 543, 558-59, 326 P.3d 702 (2014).

[21] Id. at 552 (citing RCW 10.77.060).

[22] Id.

an appropriate facility of the department for evaluation and treatment" "until he or she has regained the competency necessary to understand the proceedings against him or her and assist in his or her own defense." "At a competency hearing following restoration treatment in a felony case, the court must determine whether, by a preponderance of the evidence, the defendant is incompetent."[23]

Parenteau does not dispute he was able to understand the proceedings, but he argues, as a result of his delusional beliefs, he was unable to communicate with his attorney.

"A defendant can assist in his own defense when he 'possess[es] an adequate recall of the factual events involved in the charge against him, [is] able to communicate those recollections to his attorney, and ha[s] both an intellectual and emotional appreciation of the ramifications and consequences of the crime charged.'"[24]

Here, in August 2014, defense counsel raised concerns with Parenteau's competency to stand trial, and the court ordered a competency evaluation. Dr. Gregg Gagliardi, a licensed psychologist at Western State Hospital, preformed the evaluation. In October 2014, Dr. Gagliardi opined,

> Although [Parenteau] understands the charges against him <u>his delusional beliefs impair his ability to have a rational understanding of the facts.</u> Although he does not express delusions or paranoia

---

[23] Id. (citing RCW 10.77.086).

[24] State v. McCarthy, No. 96653-2, slip op. at 17 (Wash. August 8, 2019), http://www.courts.wa.gov/opinions/pdf/966532.pdf (quoting 12 ROYCE A. FERGUSON, JR., WASHINGTON PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 902, at 171 (3d ed. 2004)).

about defense counsel it is nevertheless evident that he expects them to join his delusional theory of the facts and to base his defense on proof of his delusional beliefs.

It is my opinion that <u>Mr. Parenteau's delusional beliefs preclude his ability to assist defense counsel with a reasonable degree of rational understanding</u>.[25]

The court determined Parenteau was incompetent and ordered up to 90 days of restoration treatment at Western State. In April 2015, after treatment, Dr. Ray Hendrickson, a licensed psychologist, issued a new report. Dr. Hendrickson opined:

Mr. Parenteau presents with no current symptoms of a mental illness that significantly impairs or impedes his ability to have a <u>factual and rational understanding</u> of the charges and court proceedings he faces. Nor does he present with symptoms of a mental illness that impairs his ability to <u>consult with his attorney</u> with a reasonable degree of rational understanding. We therefore recommend he return to Court to resume adjudication of his pending criminal matters.[26]

Defense counsel disputed Dr. Hendrickson's report, and the court ordered another competency evaluation. In October 2015, Dr. Hendrickson issued a second report and he opined:

Mr. Parenteau <u>possesses the capacity</u> to consult with <u>an</u> attorney, such as he has demonstrated by his consultation of numerous legal authorities, including Washington State statutes, rules of evidence, case law, and Court Rules—which he has done with an accurate understanding of the material presented.[27]

---

[25] CP at 28 (emphasis added).

[26] CP at 36.

[27] CP at 112.

But Dr. Hendrickson also stated he may reach a different conclusion if he had the opportunity to examine Parenteau directly or hear his testimony in court.

At the subsequent hearing, the State and Parenteau argued he was competent. Defense counsel conceded Parenteau understood the proceedings against him but argued Parenteau did not have the capacity to rationally assist defense counsel. At the hearing, Dr. Hendrickson testified, and the following exchange occurred between him and defense counsel:

> Q. So, if he is persistent in insisting that the delusional beliefs are really the only thing involved in his case, then he would be not competent at prong two.
>
> A. That's not my job, to reach that determination. But I don't think we—what you've stated addresses the issue does he have the capacity to set aside those delusions.
>
> Q. All right.
>
> A. I think he does.
>
> Q. Whose job is it to decide that?
>
> A. His Honor.
>
> Q. So, you don't—you're not able to express an opinion to help the judge out in that regard?
>
> A. On competency? No. My role, sole role is to determine whether or not in my opinion Mr. Parenteau has the capacity to understand charges he faces, the court proceedings he faces, with a reasonable degree of rational understanding, and does he have the capacity to consult with an attorney to—with a reasonable degree of rational understanding to assist in his defense. That's my sole job.[28]

---

[28] RP (Oct. 13, 2015) at 36.

11

The court explicitly found Dr. Hendrickson's testimony that Parenteau had the requisite degree of rational understanding of the proceedings and ability to assist in his defense "to be credible and reliable."[29]

After hearing testimony from Dr. Hendrickson, the court ultimately determined Parenteau was competent to stand trial. The court acknowledged the ability to assist requirement was a minimal requirement. The court stated, "Mr. Parenteau's behavior today and yesterday in the courtroom reflects the ability to assist. As far as I could tell, any delusions, if they exist, did not affect Mr. Parenteau from seeking to interpose objections which, quite frankly, displayed an impressive grasp of the law."[30] Despite Parenteau's delusions, the record reflects an adequate recall of factual events "as he believed them," an ability to communicate those recollections to his attorney, and an intellectual and emotional appreciation of the ramifications and consequences of the crime charged.[31] Parenteau does not provide any specific events, outside of his continuing delusions, that establish his inability to assist defense counsel in the above ways.

---

[29] RP (Oct. 14, 2015) at 150.

[30] Id. at 149.

[31] See McCarthy, slip op. at 18-19 (In spite of McCarthy's delusions concerning a government conspiracy, our Supreme Court determined he was able to assist defense counsel because, among other things, "[h]is testimony [was] an accurate representation of the facts as he believed them. He was coherent throughout trial, and his defense counsel stated that he never had a thought that McCarthy did not know what he was doing. . . . McCarthy's appellate counsel cannot identify any event, other than McCarthy's continuing delusions, to support the conclusion that McCarthy was incompetent to stand trial.").

Parenteau relies on State v. Lord to argue the court failed to give the appropriate weight to defense counsel's opinion concerning his competency to stand trial.[32] In Lord, our Supreme Court considered whether a hearing was required to address the defendant's competency. In that context, the court stated, "[C]onsiderable weight should be given to the attorney's opinion regarding his client's competency and ability to assist the defense."[33] But here, Parenteau challenges the court's ultimate competency determination, not the court's decision on whether to hold a hearing to address competency.

And in City of Seattle v. Gordon, this court acknowledged that the court is not required to "'accept without question a lawyer's representations concerning the competence of his client, . . . an expressed doubt in that regard by one with "the closest contact with the defendant," . . . is unquestionably a factor which should be considered.'"[34]

To determine Parenteau's competency, the court reviewed Dr. Gagliardi's October 2014 report, Dr. Hendrickson's April 2015 report, and Dr. Hendrickson's October 2015 report.[35] At the competency hearing, the court heard testimony from

---

[32] 117 Wn.2d 829, 822 P.2d 177 (1991), abrogated on other grounds by State v. Schierman, 192 Wn.2d 577, 438 P.3d 1063 (2018).

[33] Id. at 901.

[34] 39 Wn. App. 437, 442, 693 P.2d 741 (1985) (alterations in original) (quoting Drope v. Missouri, 420 U.S. 162, 177 n.13, 95 S. Ct. 896, 43 L. Ed. 2d 103 (1975)).

[35] See Benn, 120 Wn. 2d at 662 ("[C]redibility was for the trial court to determine. [The report finding Benn competent], which the trial court found credible, supports the court's finding that Benn was competent, although depressed, and seeking to stall or avoid standing trial further. We accordingly

13

Dr. Hendrickson and argument from the State, Parenteau, and defense counsel. The court also observed Parenteau at the hearing. Parenteau fails to show that court did not give the appropriate weight to defense counsel's opinion.

Parenteau also argues the court violated his due process rights and chapter 10.77 RCW because it failed to readdress his competency after granting his motion to represent himself. "[W]hether a trial court should have sua sponte ordered a competency evaluation is [ ] also reviewed for abuse of discretion."[36]

Although a court may sua sponte order a competency evaluation under RCW 10.77.060(1)(a), "[o]nce the trial court makes a determination that a defendant is competent, <u>it need not revisit competency unless 'new information' exists that shows the defendant's mental condition has changed</u> since being found competent to stand trial."[37]

Parenteau fails to establish that his mental condition changed at any point between October 15, 2015, when he was found competent to stand trial, and October 2017, when the trial occurred. In his brief, Parenteau argues

> Dr. Hendrickson and the State acknowledged that Mr. Parenteau's delusions might indeed render him incompetent if he insisted on pursuing a defense based upon his "delusional" beliefs . . . . As it happened, Mr. Parenteau did insist on pursing a defense based upon his "delusional" beliefs about the crime, once the court granted his motion to represent himself.[38]

---

uphold the trial court's determination that Benn was as competent to proceed to the penalty phase as he was to stand trial.").

[36] <u>McCarthy</u>, slip op. at 13.

[37] <u>Fedoruk</u>, 5 Wn. App. 2d at 335-36 (emphasis added) (quoting <u>Ortiz</u>, 119 Wn.2d at 301); <u>see</u> <u>McCarthy</u>, slip opinion at 13-14.

[38] Appellant's Br. at 40.

14

But Parenteau always planned to pursue a defense based on his delusions. In his October 2015 report, Dr. Hendrickson reported that Parenteau wanted his defense counsel to pursue a defense based on his delusional beliefs concerning a government conspiracy. Even if Parenteau's decision to pursue a defense based on his delusional beliefs could constitute a change in his mental condition, Parenteau already wanted to pursue such a defense in October 2015, when he was found competent to stand trial. There is no evidence supporting a change in Parenteau's mental condition after he was found competent to stand trial.

The court did not abuse its discretion when it did not sua sponte readdress Parenteau's competency.

## III. Self-Representation

Parenteau argues the court abused its discretion when it allowed him to represent himself.

We review a trial court's decision on a defendant's waiver of counsel for abuse of discretion.[39] The court's determination "depends upon the particular facts and circumstances of the case, including the background, experience and conduct of the accused."[40] "The burden of proof is on the defendant asserting that his right to counsel was not competently and intelligently waived."[41]

---

[39] In re Pers. Restraint of Rhome, 172 Wn.2d 654, 667, 260 P.3d 874 (2011).

[40] State v. Hahn, 106 Wn.2d 885, 900, 726 P.2d 25 (1986).

[41] Id. at 901.

The Washington Constitution and the United States Constitution grant criminal defendants the right to self-representation.[42] But this right is in tension with a defendant's right to the assistance of counsel.[43] "Because of this tension, a defendant must unequivocally request to proceed pro se before he or she will be permitted to do so."[44] Even if a defendant makes an unequivocal and timely request, in order to grant a defendant's request to proceed pro se, the court must establish that the defendant made a voluntary, knowing, and intelligent waiver of the right to counsel.[45]

When determining whether a waiver is voluntary, knowing, and intelligent, the court must confirm "that the defendant understood the seriousness of the charge, the possible maximum penalty involved, and the existence of technical procedural rules governing the presentation of his defense."[46] The same standard applies to defendants whose competency to stand trial has been questioned but have been found competent to stand trial.[47]

Here, on October 19, 2015, 14 months after he was charged, the court arraigned Parenteau. The arraignment had been continued while the court determined whether Parenteau was competent to stand trial. At the start of the

---

[42] State v. Curry, 191 Wn.2d 475, 482, 423 P.3d 179 (2018).

[43] Id.

[44] Id. at 482-83.

[45] Id. at 483 (quoting DeWeese, 117 Wn.2d at 377).

[46] DeWeese, 117 Wn.2d at 378.

[47] See Rhome, 172 Wn.2d at 667; Hahn, 106 Wn.2d at 895; State v. Kolocotronis, 73 Wn.2d 92, 99, 436 P.2d 774 (1968).

hearing, Parenteau interrupted the State's introduction of the case and stated, "I request to go pro se."[48] Moments later, Parenteau repeated his request. After pleading not guilty, Parenteau stated, "I need the paperwork for going pro se."[49] Defense counsel indicated, "It's been clear for months that [Parenteau] wants to go pro se. And now that he's been deemed competent, I think that he knows the best time to hear that motion."[50] Parenteau again repeated his request to proceed pro se. The court inquired into why Parenteau wanted to proceed pro se. Parenteau responded, "It's the only way I'm going to get justice done."[51] The court asked if Parenteau understood he had the right to an attorney, Parenteau said, "Yes. . . . A noncorrupted lawyer that is."[52] Parenteau indicated, "I understand that whole paper you're looking at . . .and there is a typo on there because you can go back to a paid attorney after going pro se."[53] The court asked Parenteau whether he understood the charges against him and the maximum penalties for those crimes. Parenteau said he did.

The court further inquired into Parenteau's understanding of his right to counsel and the role of defense counsel:

COURT:      [Y]ou understand that you have a right to a lawyer
            to represent you and speak on your behalf in
            court?

---

[48] RP (Oct. 19, 2015) at 55.

[49] Id. at 58.

[50] Id. at 60.

[51] Id. at 61.

[52] Id.

[53] Id. at 62.

PARENTEAU:     Yes.

COURT:         Also to advise you about your legal rights and options?

PARENTEAU:     Yes.

COURT:         Okay. To explain and assist you in legal and other court proceedings?

PARENTEAU:     Yes.

COURT:         To investigate and explore possible defenses to the charges against you that may or may not be readily apparent to somebody --

PARENTEAU:     Yes.

COURT:         -- who doesn't have legal training?

PARENTEAU:     Yes.

COURT:         Or maybe not apparent to you?

PARENTEAU:     Yes.

COURT:         Okay. The lawyer also can prepare and conduct your defense on any motion hearing or at the trial itself. Do you --

PARENTEAU:     Yes.

COURT:         -- understand that, sir? Okay.[54]

Parenteau expressed his frustration at defense counsel's failure to file any pretrial motions. The court told Parenteau, "Well, you see, there was a competency hearing pending, we couldn't do that."[55] Parenteau indicated, "That's

---

[54] Id. at 63.

[55] Id. at 64.

18

irrelevant."[56] The court inquired into Parenteau's understanding of the roles of the judge and prosecuting attorney:

COURT: So you understand if you represent yourself, the judge is not your attorney?

PARENTEAU: I understand that.

COURT: Okay. And cannot give you legal advice.

PARENTEAU: Never would ask.

COURT: All right. The prosecuting attorney is also not your attorney obviously; you understand that, sir?

PARENTEAU: I understand that.

COURT: Okay. And he or she cannot give you legal advice.

PARENTEAU: Would never ask him.

COURT: Okay. Judge, prosecuting attorney, and court personnel are not required to explain court procedures or the law to you?

PARENTEAU: Nope.[57]

The court also inquired into Parenteau's understanding of criminal rules and procedures:

COURT: Okay. You'll be required to follow all legal rules and procedures including the rules of evidence.

PARENTEAU: Yes, Your Honor.

COURT: Are you familiar with the rules of evidence?

---

[56] Id.

[57] Id.

19

PARENTEAU:    I'll get on it.

COURT:        Okay. You have a right to remain silent, but if you do testify at the trial or any pretrial hearing or any other matter on your behalf, you will be[,] you may be required to present testimony by asking questions of yourself. Do you understand that?

PARENTEAU:    Can't wait.[58]

With regard to Parenteau's understanding of the availability of standby counsel, the following exchange occurred between the court and Parenteau:

COURT:        If you represent yourself, the judge is not required to provide you with an attorney as a legal advisor or a standby counsel?

              . . . .

PARENTEAU:    I understand.

              . . . .

COURT:        You know what's a standby counsel?

PARENTEAU:    A standby counsel would be someone in reserve.

COURT:        Right. Or somebody sitting there to give you legal advice . . . in case you get in trouble[, i]n case you don't know the rules of evidence[, i]n case you don't know a motion.

PARENTEAU:    Exactly, Your Honor.

COURT:        All right. A judge is not required to give one to you.

PARENTEAU:    Exactly, Your Honor.

---

[58] Id. at 64-65.

20

COURT: All right. Okay. Later if you change your mind and you decide you want an attorney to represent you, the judge may require you to continue to represent yourself without assistance of a lawyer?

PARENTEAU: That's incorrect, Your Honor. I've got case law that counteracts that.

. . . .

COURT: Do you understand the judge may disagree with you?

PARENTEAU: They can disagree with it all you want, but case law wins cases.

COURT: Okay.

PARENTEAU: Also with motions.

COURT: Well, you understand the Court of Appeals or Supreme Court may disagree . . . with you too?

PARENTEAU: Cool.[59]

Parenteau indicated that no one was pressuring or threatening him to represent himself. The court gave Parenteau the waiver of counsel form and allowed him to think about it overnight, noting:

Sir, I have to tell you. This is very important decision that you're making. I know you've told me several times . . . that you wanted to represent yourself. But it's a very important decision that you're making, not one made lightly. . . .

What I'm going to do is, we'll complete this form. We're going to give it to you, have you consider it overnight. And if you really want to represent yourself tomorrow or our next court hearing, whenever that can be, we'll consider that at the next hearing. But

---

[59] Id. at 65-67.

you're going to look at this form. You're going to consider it overnight.[60]

The next day, October 20, 2015, the court asked Parenteau whether he had a chance to review the form, and Parenteau said, "Yes."[61] The court asked Parenteau whether he understood the form, and the following exchange occurred:

PARENTEAU:    I understood, but I disagree with one statement on it, Your Honor.

COURT:    And what might that be?

PARENTEAU:    On there it falsely states if I could later change[,] "If I later change my mind and decided that I want an attorney to represent me, the judge may require me to continue to represent myself without the assistance of a lawyer." Case law says once you go pro se, you can actually recall your pro se status at any time. . . .

COURT:    Well, sir, do you understand the judge may disagree with you?

PARENTEAU:    You may.

COURT:    That's why it says "may."

PARENTEAU:    Yeah.

COURT:    Right? You understand that?

PARENTEAU:    Yeah.[62]

Ultimately, the court allowed Parenteau to proceed pro se:

---

[60] Id. at 69.

[61] RP (Oct. 20, 2015) at 73.

[62] Id. at 74.

22

Well, Mr. Parenteau, . . . I'm going to find that you're making a knowing, voluntary, and intelligent waiver of counsel. I think you—well, I'll find that you know what counsel is and the assistance counsel could provide. So if you wish to go pro se status, that is your right, and I'm going to grant that to you.[63]

Parenteau relies on State v. Hahn[64] to argue the court failed to consider Parenteau's mental illness when it addressed his waiver of his right to counsel. Hahn was convicted of second degree murder after waiving his right to counsel and representing himself at trial. Following his arrest, Hahn was diagnosed with paranoid schizophrenia, but the court found him competent to stand trial. Subsequently, Hahn moved to represent himself. On three separate occasions, the trial court engaged in a colloquy with Hahn concerning his waiver of his right to counsel.

First, at a pretrial hearing, the court examined Hahn about his request, explored his legal experience by inquiring about his understanding of the possible penalties, possible defenses, court rules, and made specific findings that Hahn understood. The court also appointed backup counsel as a research assistant.[65]

At a separate pretrial hearing, the court again engaged in a colloquy concerning Hahn's request to proceed pro se and asked Hahn about his belief that he was a secret agent, pointing out the jury would find his story difficult to believe, especially if he was not represented by counsel. The court noted it wanted to

---

[63] Id. at 77.

[64] 106 Wn.2d 885, 726 P.2d 25 (1986).

[65] Id. at 896.

"make sure . . . that you understand you're giving up the kind of potential disposition of your case through a finding of insanity that would keep you out of prison." Again, the court again found that Hahn understood.[66]

And third, before the trial started, the court "inquired of Hahn about his education, background, former employment, and understanding that technical rules apply in court. He urged Hahn to consider representation by counsel."[67] In Hahn, our Supreme Court determined:

> The record in this case presents an example of a thorough inquiry by the trial judges into Hahn's understanding of the consequences of waiving counsel and establishes that Hahn validly waived his right to counsel. Hahn was fully informed of the alternatives available, comprehended the consequences of representing himself, and freely chose to proceed.[68]

In the context of a defendant whose competency has been questioned, Hahn is an example of a thorough inquiry into whether there has been a knowing, intelligent, and voluntary waiver of the right to counsel. But Hahn does not establish the minimum required inquiry.

When a defendant's competency has been questioned, a trial court may consider a defendant's mental health history even where the defendant has been found competent to stand trial.[69] In general, "a defendant 'should be made aware of the dangers and disadvantages of self-representation, so that the record will

---

[66] Id. at 897.

[67] Id. at 900.

[68] Id. at 901.

[69] Rhome, 172 Wn.2d at 663; Kolocotronis, 73 Wn.2d at 99; Indiana v. Edwards, 554 U.S. 164, 174, 128 S. Ct. 2379, 171 L. Ed. 2d 345 (2008).

24

establish that he knows what he is doing and his choice is made with eyes open."[70]

Although "trial courts cannot deny pro se status simply because a lay person lacks the training and experience of a lawyer, . . . trial courts may consider that a defendant's mental capacity will have serious and negative effects on the ability to conduct a defense."[71] "A searching inquiry into a defendant's mental health status is different from an inquiry into a defendant's skill and judgment to act as his own lawyer. . . . Skill is not the same as capacity."[72]

Here, similar to Hahn, the court addressed the dangers of proceeding pro se with Parenteau:

COURT: All right. Okay. This form says it may be difficult for you to do a good job as your own attorney. And I'll—do you understand what that—

PARENTEAU: I understand that.

COURT: Do you understand that—

PARENTEAU: I've had a crutch attorney for the last fifteen months, Your Honor.

COURT: Do you understand that, sir, one of the reasons people may not want to represent themselves is because they are not objective about their own case?

PARENTEAU: Biased, yes, Your Honor.

---

[70] Rhome, 172 Wn.2d at 659 (internal quotation marks omitted) (quoting Faretta v. California, 422 U.S. 806, 835, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975)).

[71] Id. at 669 (citing Faretta, 422 U.S. at 835).

[72] Id.

COURT:        Right. Do you know what that means?

PARENTEAU:    Yes.[73]

Additionally, the court explicitly stated that it considered Dr. Hendrickson's report in the context of determining whether Parenteau knowingly, intelligently, and voluntarily waived his right to counsel. Any suggestion that the court failed to consider Parenteau's mental health in the context of his request to proceed pro se is unpersuasive.

Although the court's inquiry was not as thorough as the court's inquiry in Hahn, it sufficiently addressed the required and suggested considerations. The court did not abuse its discretion when it allowed Parenteau to represent himself.

## IV. Right to Present a Defense

Parenteau contends the court violated his right to present a defense when it denied his numerous motions to investigate, present evidence, and subpoena witnesses.

### a. Exclusion of Evidence

Under the Sixth Amendment to the United States Constitution, a criminal defendant has a constitutional right to "at least broadly control his own defense."[74] The right to control one's own defense is not absolute.[75]

---

[73] RP (Oct. 19, 2015) at 65.

[74] State v. Jones, 99 Wn.2d 735, 740, 664 P.2d 1216 (1983).

[75] Id. at 741.

Parenteau's defense was that Linda and David were killed by the Federal Bureau of Investigation (FBI) because Parenteau had discovered the Union Gospel Mission was a covert CIA drug operation. Parenteau claimed during his 2012 involuntary commitment he was kidnapped and neurotransmitter devices were implanted into his body by the CIA and FBI.

Parenteau argues the court abused its discretion when it excluded evidence concerning his prior involuntary commitments. He also contends the court abused its discretion when it limited his questioning of United Gospel Mission employees. But Parenteau fails to establish a foundation to admit this speculative evidence. Additionally, Parenteau's right to present his theory of the case was not foreclosed because he was able to testify as to his theory.

b. *Witnesses*

Parenteau contends the court abused its discretion when it denied his request to subpoena several witnesses but fails to offer any argument to support his contention.[76] "Passing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration."[77] Additionally, our review of the record does not reveal a factual basis to compel the court to allow Parenteau to call witnesses such as military generals, United States attorneys, FBI agents, or CIA agents.

---

[76] See Appellant's Br. at 33.

[77] Palmer v. Jensen, 81 Wn. App. 148, 153, 913 P.2d 413 (1996).

### c. Resources to Investigate

Parenteau contends the court violated article I, section 22 of the Washington Constitution because it failed to provide Parenteau resources to investigate his defense.

"Just as the right to appointed counsel is not satisfied unless the representation is meaningful, the right to represent oneself cannot be satisfied unless it is made meaningful by providing the accused the resources necessary to prepare an adequate pro se defense."[78]

> What measures are necessary or appropriate to constitute reasonable access lie within the sound discretion of the trial court after consideration of all the circumstances, including, but not limited to, the nature of the charge, the complexity of the issues involved, the need for investigative services, the orderly administration of justice, the fair allocation of judicial resources (i.e., an accused is not entitled to greater resources than he would otherwise receive if he were represented by appointed counsel), legitimate safety and security concerns, and the conduct of the accused.[79]

Parenteau argues the court violated his article I, section 22 right to present a defense because it denied his "requested help and funding for medical imaging, a radio frequency signal locator apparatus, a 'penile ultrasound,' 'otoscope exam,' and 'fluoroscopy exam for foreign bodies.'"[80] Before trial, during a routine appointment, Parenteau had an ultrasound of his scrotum. At trial, the radiologist who reviewed the ultrasound testified that "it was a normal scrotal ultrasound."[81]

---

[78] State v. Silva, 107 Wn. App. 605, 620-21, 27 P.3d 663 (2001).

[79] Id. at 622-23.

[80] Appellant's Br. at 27.

[81] RP (Nov. 7, 2017) at 2401.

Although Parenteau was facing serious charges, it was within the court's discretion to deny Parenteau's investigative resource requests.

Just because the court allowed Parenteau to represent himself does not mean the court is required to grant any and all of Parenteau's motions to investigate, subpoena witnesses, or admit evidence. In proceeding pro se, Parenteau had complete authority to choose his defense strategy. But if he chooses poorly, that is not an error of the court. The court did not violate Parenteau's right to present a defense.

## V. Restitution

Parenteau contends the court violated RCW 9.94A.753(1) because the restitution award was untimely. The statute provides, "When restitution is ordered, the court shall determine the amount of restitution due at the sentencing hearing or within one hundred eighty days," and that "[t]he court may continue the hearing beyond the one hundred eighty days for good cause."[82]

Here, Parenteau was sentenced on November 29, 2017. Restitution was set on May 23, 2018, 175 days after sentencing. But on May 23, 2018, Parenteau was unable to participate by phone because the prison where Parenteau was located was on restricted movement. The court continued the hearing to May 31, 2018, 183 days after sentencing, to allow Parenteau to participate.

We conclude the court had good cause to continue the hearing and did not violate RCW 9.94A.753.

---

[82] RCW 9.94A.753(1).

## VI. Court Costs

Parenteau asks the panel to strike the $895 in court costs under State v. Ramirez[83] and House Bill (HB) 1783. HB 1783 amended RCW 10.01.160(3), which provides, "The court shall not order a defendant to pay costs if the defendant at the time of sentencing is indigent." HB 1783 became effective June 7, 2018; Parenteau was sentenced in November 2017. But, in Ramirez, our Supreme Court recognized that HB 1783 applies prospectively to all cases with pending direct appeals.[84]

Here, the trial court did not inquire into Parenteau's ability to pay. The State concedes remand is appropriate for the court to consider Parenteau's ability to pay. We accept the State's concession.

## VII. Statement of Additional Grounds

Under RAP 10.10, "a defendant may submit a pro se statement of additional grounds for review."[85] But our review is subject to several "practical limitations."[86] To this point, RAP 10.10(c) provides in part, "Reference to the record and citation to authorities are not necessary or required, but the appellate court will not consider a defendant's statement of additional grounds for review if it does not inform the court of the nature and occurrence of alleged errors."[87]

---

[83] 191 Wn.2d 732, 426 P.3d 714 (2018).

[84] Id. at 749.

[85] State v. Calvin, 176 Wn. App. 1, 26-27, 316 P.3d 496 (2013).

[86] Id.

[87] (Emphasis added.)

30

We cannot review arguments unsupported by credible evidence in the record.[88] Additionally, "[t]his court is not required to search the record to find support for the defendant's claims."[89] Although RAP 10.10(c) does not require reference to the record or citation to authorities, we are unable to review claimed errors that lack sufficient citation to the record, argument, or reference to authority to inform us of the nature and occurrence of the alleged errors.

a. *Additional Ground Nos. 1 & 2—False Testimony & False Evidence*

Parenteau argues his due process right to a fair trial was violated because the State introduced false testimony and evidence.

The Sixth and Fourteenth Amendments to the United States Constitution and article I, sections 3 and 22 of the Washington Constitution guarantee criminal defendants the right to a fair trial.[90] Under this right, the State has a duty to not use evidence or testimony known to be false and to correct State witnesses who testify falsely.[91]

Parenteau cites numerous examples of false evidence and false testimony, but his contentions rely upon his subjective view of credibility. Further, even if there was false evidence or testimony presented at trial, Parenteau fails to show

---

[88] State v. Alvarado, 164 Wn.2d 556, 569, 192 P.3d 345, 351 (2008).

[89] State v. Anderson, 76672-4-I, slip op. at 34 (Wash. August 5, 2019), http://www.courts.wa.gov/opinions/pdf/766724.pdf.

[90] See State v. Davis, 141 Wn.2d 798, 824-25, 10 P.3d 977 (2000).

[91] State v. Finnegan, 6 Wn. App. 612, 616, 495 P.2d 674 (1972).

that the State knew or should have known any of the cited examples were actually false.

### b. Additional Ground No. 3—Prosecutorial Misconduct

Parenteau raises multiple instances of prosecutorial misconduct.

To show prosecutorial misconduct, the defendant must show "'the prosecutor's conduct was both improper and prejudicial in the context of the entire record and the circumstances at trial.'"[92]

First, Parenteau argues the State charged him based on false evidence, but he fails to establish false evidence. Second, he contends the State failed to disclose alleged FBI audio and video recordings, but he does not provide any evidence that such recordings exist. Third, he claims Trombetta/Youngblood violations for failure to collect and preserve allegedly exculpatory evidence (pillow case and gloves), but he refers to the failure of the State to offer alleged exhibits rather than a failure to collect and preserve. Fourth, Parenteau contends the State intercepted his private communications with his attorney, but he failed to provide any evidence to support this allegation. Fifth, and finally, he challenges the prosecutor's opening statement and closing argument, but he fails to establish impropriety or prejudice.

---

[92] State v. Thorgenson, 172 Wn.2d 438, 442, 258 P.3d 43 (2011) (quoting State v. Magers, 164 Wn.2d 174, 191, 189 P.3d 126 (2008)).

*d.  Additional Ground No. 4—Miscellaneous*

Parenteau also contends the trial court abused its discretion in its rulings imposing a no-contact order and protective order, limiting cross-examination, making various evidentiary rulings, refusing to appoint standby counsel, refusing to recuse, conspiring to falsely claim he was incompetent, denying continuances, failing to honor speedy trial rights, denying his motion alleging government misconduct, and general judicial misconduct.  But he fails to provide citations to the record supporting these claims and otherwise fails to establish any abuse of discretion or other legal error.

*e.  Additional Ground No. 5—Cumulative Error*

Parenteau argues cumulative error resulted in an unfair trial.  But he does not establish any cumulative error.[93]

*f.  Additional Ground No. 6—Illegal Search Warrant*

Parenteau contends a search warrant was based upon a perjured affidavit, but does not provide a factual basis supporting this claim.

*g.  Additional Ground No. 7—Insufficient Evidence*

Parenteau contends the State failed to present a witness who positively identified either David or Linda.  But he fails to present any argument outside of

---

[93] In re Detention of Coe, 175 Wn.2d 482, 515, 286 P.3d 29 (2012) ("The cumulative error doctrine applies where a combination of trial errors denies the accused a fair trial even where any one of the errors, taken individually, may not justify reversal.").

labeling the section "INSUFFICIENT EVIDENCE." He also fails to provide any citation to authority or meaningful citation to the record.

Therefore, we affirm Parenteau's conviction but remand for the court to consider Parenteau's ability to pay court costs.

WE CONCUR: